**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | § | **Misc. Case No. 15-0402** |
| | § | |
| **Robert Dellamano,** | § | **Matter of Court Business** |
| | § | |
| Attorney. | § | **[Docket No. 4]** |

## ORDER DENYING THE MOTION TO DISQUALIFY

On December 18, 2015, Robert J. Dellamano filed a motion demanding judicial recusal (the "Motion to Disqualify") [Docket No. 4].  Dellamano is the subject of this Miscellaneous Proceeding and an attorney with the Critique Services Business, a "bankruptcy services" business that is a front for the unauthorized practice of law in this District.  The Court now orders that the Motion to Disqualify be denied, as set forth herein.

### I.  BACKGROUND

#### A.  Dellamano's Law License and Admission Status

Dellamano is not licensed to practice law in the state of Missouri. He is licensed to practice law in the state of Illinois. Dellamano was admitted to practice before the U.S. District Court for the Eastern District of Missouri on October 9, 2015.  As such, it appears that, prior to October 9, 2015, Dellamano could not lawfully practice law on behalf of a third person in this state, in this District, or in any case before this Court.

#### B.  Dellamano and Critique Services L.L.C.

In his Motion to Disqualify, Dellamano admits that he is in "association with Critique Services, LLC." Critique Services L.L.C. is the limited liability company through which the Critique Services Business is orchestrated.  Critique Services L.L.C. is organized and owned by a non-attorney, Beverly Holmes Diltz. Over the past near two decades, Diltz and her various "Critique"-named businesses and staff have been repeatedly sued by the U.S. Trustee (the "UST") here and in the Southern District of Illinois for unlawful business practices.  On this side of the Mississippi River, Diltz has been permanently barred from being a bankruptcy petition preparer, and she and other persons affiliated with her

1

business have been enjoined from the unauthorized practice of law. Just across the river, in 2003, the U.S. Bankruptcy Court for the Southern District of Illinois permanently barred Diltz from ever again doing business in connection with bankruptcy cases there.

Through Critique Services L.L.C., Diltz contracts or otherwise affiliates or associates with attorneys (the "Critique Services Attorneys"), under the pretense that the attorneys will practice law and that Diltz will provide them "support" services, including bookkeeping, administrative staff, advertising, leasing and "intellectual property." The Critique Services Business usually has one attorney,[1] who holds himself out as operating at eponymously named "law firm" located in the Critique Services Business Office (as that term is defined below). However, this paperwork just serves to cover up the reality: Diltz, her attorneys, and non-attorney staff persons at the Critique Services Business engage in the unauthorized practice of law.

## C. The Critique Services Business

The nature of the Critique Services Business has been documented in various other cases.[2] It is sufficient for purposes here to summarize as follows.

The Critique Services Business is an all-cash operation that targets low-income, minority persons in metropolitan St. Louis, offering "bankruptcy services" to the public. It is located at 3919 Washington Blvd., St. Louis, Missouri 63108 (the "Critique Services Business Office"). It is massive operation. In 2013 alone, James C. Robinson (the then-Critique Services Business Attorney) filed more

---

[1] Sometimes, Critique Services has more than one attorney, especially when one attorney is weak, has had his electronic filing privileges revoked, or has been suspended from practicing before the Court. As noted herein, Dellamano admits that he worked with Meriwether at the Critique Services Business Office, beginning July 2015.

[2] *See, e.g., In re Latoya Steward* (Case No. 11-46399), *In re Evette Nicole Reed, et al.* (Lead Case No. 14-44818), *In re Arlester Hopson* (15-43871), *In re Shadonaca Davis* (15-48102), *In re Leander Young* (15-44343), and *In re Lawanda Watson* (11-42230), among others.

than a thousand cases and collected more than three-quarters of a million dollars in (reported) attorney's fees.

Critique Services Business clients believe that they are paying for legal representation in their bankruptcy cases. However, they do not receive meaningful legal representation. Clients are dumped off onto non-attorney staff persons, and the signatures and bar card numbers of the Critique Services Attorneys are affixed to documents prepared by non-attorney staff persons. Critique Services Attorneys do not collect their fees personally and have little (if any) contact with the clients. They do not meet with clients before the fees are collected; sometimes, they do not meet with the clients before the case are filed, if at all. Often, the Critique Services Attorneys fail to file important documents, fail to return telephone calls, fail to appear at § 341 meetings, and fail to appear at contested hearings. Clients often come to court (without their counsel) and state that they are represented by "Critique Services"—as if "Critique Services" is a lawyer. Sometimes they cannot name their Critique Services Business lawyer. Recently, a Critique Services Business debtor came to court unable to identify the *gender* of his lawyer, much less the lawyer's name. In fact, after the name of his attorney of record was read to him from the Court's docket, the debtor stated that he had never even *heard of* his attorney.[3]

The Critique Services Business Office is run such that telephone calls from clients are not returned and requests to meet with the attorney are denied. Case mismanagement and client abandonment are standard operating procedures. And the Critique Services Business lies to its clients, advising that Court dispositions are issued based on the judge's personal animus, rather on the fact that the Critique Services Business's mismanagement and the attorneys' ineptitude results in significant harm to the client.[4] Sadly, this operation has managed to escape significant consequences in this District, for the most part, because of who it chooses to victimize: the working-class poor—people who

---

[3] *In re Arlester Hopson* (15-43871) (July 22, 2015 hearing).

[4] *In re Leander Young* (Case No. 15-44343).

often are not in financial and life circumstances that permit them to take on the Critique Services Business when they are ripped off.

This is not to say that the unlawful activities occurring at the Critique Services Business have gone unnoticed. Since 1999, Diltz, along with her "Critique Services"-named entities and her revolving-door of attorneys, have been repeatedly sued by the UST for the unauthorized practice of law and other unlawful practices—in 1999, 2001, 2002, 2003, 2005, and 2014.[5] As noted earlier, in the Southern District of Illinois, in 2003, Diltz was permanently barred from doing any kind of business there.[6] In this District, Diltz and her affiliated persons have been repeatedly enjoined from the unauthorized practice of law, most recently in 2007 in *Gargula v. Diltz, et al. (In re Hardge)* (Adv. Proc. No. 05-4254). Every attorney affiliated with the Critique Services Business (*e.g.,* Leon Sutton,[7] George E. Hudspeth, [8] Ross H. Briggs,[9] Robinson,[10] Meriwether,[11] and

---

[5] *See Pelofsky v. Holmes d/b/a Critique Service (In re Daniele M. Hamilton)* (Case No. 99-4065); *Pelofsky v. Holmes d/b/a Critique Service (In re Beatrice Bass)* (Case No. 01-4333); *In re Cicely Wayne* (Case No. 02-47990); *Rendlen v. Briggs, et al. (In re Thompson)* (Adv. Proc. No. 03-4003); *Gargula v. Diltz, et al. (In re Hardge)* (Adv. Proc. No. 05-4254); and *In re Terry L. and Averil May Williams, et al.* (Lead Case No. 14-44204).

[6] *In re Barry Bonner, et. al.* (Bankr. S.D. Ill. Lead Case No. 03-30784).

[7] In *In re Barry Bonner, et. al.* (Bankr. S.D. Ill. Lead Case No. 03-30784), Sutton was permanently disbarred from practicing law before the Illinois Bankruptcy Court. On May 24, 2004, Sutton was suspended on an interim basis by the Missouri Supreme Court; on May 10, 2006, he was disbarred by the Missouri Supreme Court (Missouri Supreme Court Case No. SC87525).

[8] On August 1, 2006, Hudspeth was disbarred by the Missouri Supreme Court (Missouri Supreme Court Case No. SC87881).

[9] In *In re Robert Wigfall, Jr.* (Bankr. S.D. Ill. Case No. 02-32059), Briggs was sanctioned by the U.S. Bankruptcy Court for the Southern District of Illinois (the "Illinois Bankruptcy Court") and suspended from filing new cases for three months. In 2003, in *Rendlen, UST v. Briggs, et al. (In re Thompson)* (Adv. Proc. No. 03-4003), Briggs was sanctioned by this Court and suspended from filing new cases for six months.

4

Dellamano[12]), except one,[13] has been suspended or disbarred for his activities with the Critique Services Business.

### D. Dellamano's Activities Prior to Being Admitted to this Federal District

As noted in Part I.A, Dellamano is not licensed to practice law in this state, and was not admitted to practice law in this federal District until October 9, 2015. Nevertheless, on September 14, 2015, while attempting to obtain a passcode for the Court's electronic docketing system ("CM-ECF"),[14] Dellamano advised the Clerk's Office that he had been "with" Meriwether at the Critique Services Business since July 2015, and represented in writing that his "law firm" is "Critique Services."[15]  It was unclear what services Dellamano could have been

---

[10] In *In re Latoya Steward* (Case No. 11-46399), on June 10, 2014, Robinson was suspended from the privilege of practicing before this Court for one year. (After one year, Robinson made no efforts to seek reinstatement and has not met the requirements for reinstatement.  He remains suspended to this day.)  In *In re Steward*, Robinson and Critique Services L.L.C. were sanctioned $49,720.00 for contempt of court, abuse of process and making false statements in connection with their refusal to make Court-ordered discovery about their business operations.  In addition, Robinson and Elbert A. Walton, Jr. (his and Critique Services L.L.C's lawyer in *In re Steward*) were suspended from the privilege of practicing before this Court for their egregious professional conduct during the court of the litigation of the debtor's motion to disgorge Robinson's fees.

[11] In *In re Leander Young* (Case No. 15-44343), on December 7, 2015, Meriwether was suspended from the privilege of practicing before this Court until March 7, 2016.

[12] In this Miscellaneous Case, on December 18, 2015, Dellamano was suspended from the privilege of practicing before this Court until March 7, 2016, although he will be reinstated prior to that date if he makes certain required disclosures regarding how he does business in this District.

[13] Dedra Brock-Moore was affiliated with the Critique Services Business from August 2014 to August 2015.  It is the Court's understanding that she has terminated her affiliation with the business.

[14] His efforts were unsuccessful because—as the Clerk's Office explained to Dellamano at the time—CM-ECF passcodes are issued only to attorneys admitted to practice in the District.

[15] *In re Arlester Hopson* (Case No. 15-43871)[Docket 61].

lawfully rendering in connection with his work with Meriwether and at the Critique Services Business, given that it appears that he could not have been (lawfully) practicing law in Missouri or in this federal District before October 9, 2015.

In addition, between July 2015 and October 9, 2015, Dellamano represented numerous clients of Meriwether at § 341 meetings—an act constituting the practice of law. Dellamano's conduct came to the Court's attention in the summer of 2015, when certain chapter 7 trustees began raising their concerns about Dellamano's participation at their § 341 meetings. Dellamano's claim of "representing" Meriwether's clients was placing the trustees in an untenable professional situation and jeopardizing their § 341 meetings.

Dellamano does not suggest that the trustees were mistaken or lying about the fact that he represented Meriwether's clients at § 341 meetings between July 2015 and October 9, 2015. (Of course, it would be difficult to deny appearances at § 341 meetings, since appearances are part of the record.) Instead, in his Motion to Disqualify, Dellamano merely complains about the fact that the Judge was made aware of his conduct.

It is deeply troubling that Dellamano was practicing law at § 341 meetings between July 2015 and October 9, 2015.   A § 341 meeting is not an administrative technicality where legal representation may not really be needed. At a § 341 meeting, a debtor is subjected, under oath, to questioning by the trustee, the UST, and his creditors. He is bound by his representations and can do himself great harm if he makes false or confusing representations.  A debtor is entitled to be represented at that meeting by counsel who knows his case, is admitted to practice law, and who has made the required disclosures to the Court regarding the terms of his representation.   Moreover, every time Dellamano showed up to "represent" one of Meriwether's clients, he risked the meeting being shut down by the trustee—as a trustee is certainly within his rights to refuse to conduct a § 341 meeting if he suspects that the debtor's attorney is attempting to unlawfully practice law at that meeting.   The fact that this apparently did not happen does not excuse the serious risk that Dellamano's actions presented.

The Court attempted to impress upon Dellamano the importance of ceasing an unlawful practice of law at § 341 meetings. On September 18, 2015, in the matter of I*n re Arlester Hopson* (Case No. 15-43871), the Court issued a Notice to Dellamano, advising that, without being admitted to practice here, he could not represent any debtor at a § 341 meeting.

### E.  Dellamano's Activities Since Being Admitted in this Federal District

Since October 9, 2015, Dellamano has been practicing law in Missouri presumably by "piggybacking off" his admission to practice in this federal District. Dellamano's brief tenure of practicing before the Court is summarized below.

After Dellamano was admitted to practice in this federal District on October 9, 2015, he did not file a notice of appearance in any case, or file a Rule 2016(b) attorney compensation disclosure statement in any case, or request a CM-ECF passcode, for two months. However, he nevertheless continued representing Meriwether's clients at § 341 meetings. That is, even after being admitted to practice in this District, Dellamano *still* made no effort to become the attorney of record for any debtor or to comply with basic requirements for representing a debtor in a bankruptcy case.

Then, on December 7, 2015, Dellamano's hand was forced when Meriwether was suspended from the privilege of practicing before the Court. Dellamano had to come out from the shadows of the Critique Services Business, as the only Critique Services Attorney who, at that point, was not suspended.

So, on December 10, 2015—three days after Meriwether was suspended—Dellamano sought to obtain a CM-ECF passcode.  In doing so, he represented to the Clerk's Office that he now operates as the "Law Firm of Robert J. Dellamano."  However, he used Meriwether's address of 3919 Washington Blvd. and Meriwether's office telephone number as his address and telephone number. The problem with this was: in the December 7 order suspending Meriwether, the Court had prohibited any other attorney from using Meriwether's address and telephone number as his own address and telephone number in Court records during Meriwether's suspension—a step taken to ensure that, during Meriwether's suspension, no attorney would "ghost-lawyer"

for Meriwether or further perpetuate the unauthorized practice of law in which Meriwether had been participating at the Critique Services Business.

On December 11, 2015, the Court entered an order [Docket No. 1], opening this Miscellaneous Case and directing that Dellamano not be permitted to obtain a CM-ECF passcode unless and until he provided certain disclosures about his relationship with Meriwether and the Critique Services Business. Dellamano remained free to represent clients and to file documents with the Court, but he could not remotely access the CM-ECF system to do so. Without a CM-ECF passcode, he had to file at the computer banks in the Clerk's Office.

On December 16, 2015, at the computer banks in the Clerk's Office, Dellamano filed notices of appearance in numerous chapter 13 cases[16] in which he represented that he now, suddenly, had a new mailing address at 100 S. 4th St., Ste. 550, St. Louis, Missouri 63102 (the "Deloitte Building"). However, when the Court attempted to confirm the correctness of this address in order to mail correspondence to Dellamano, it discovered that Dellamano appeared not to have such a mailing address.

On December 17, 2015, the Court entered an order [Docket No. 3] in this Miscellaneous Proceeding, directing that Dellamano to file a copy of a leasing agreement showing that, as of December 16, 2015 (the day that the notices of appearance were filed), he had a mailing address at the Deloitte Building. The Court gave notice that, if Dellamano failed to provide such a document, he would be suspended from the privilege of practicing before the Court for three months.

On December 18, 2015, Dellamano filed a copy of a leasing agreement for a mailbox located at the Deloitte Building. However, the leasing agreement had been executed earlier only earlier that day (December 18), and included a backdated "start date" of December 15, 2015. Backdating a start date does not re-write history. By Dellamano's own evidence, it was established that on December 16, 2015—the day he filed his notices of appearance—Dellamano had

---

[16] In the days that followed, the Court discovered that Dellamano had made the same false representation in a notice of appearance that he filed in the chapter 7 case of *In re Toni L. Davenport* (Case No. 15-49067).

no mailing address at the Deloitte Building. Moreover, the reason for Dellamano's making of this false statements regarding his address was readily apparent: Dellamano wanted to file his notices of appearance on December 16, 2015, but had no address to list, other than that of the Critique Services Business Office. However, he could not use the Critique Services Business Office address and likely did not want to make further disclosures to the Court regarding his connection to Meriwether. So, he just gave a false address—perhaps planning to eventually obtain a mailbox at that address or perhaps planning to later change his address of record to some other location—assuming that no one would notice (or care about) the falseness.[17]

On December 18, 2015, Dellamano also filed a motion to transfer the Miscellaneous Proceeding to the District Court (the "Motion to Transfer") [Docket No. 5] and a motion to recuse (the "Motion to Disqualify") [Docket No. 4].

Late in the afternoon of December 18, the Court entered a Notice of Suspension [Docket No. 17], suspending Dellamano until March 7, 2016, for making false representations of his address in his notices of appearance.[18]

On December 21, the Court issued a Final Order of Suspension in the Miscellaneous Case, suspending Dellamano until March 7, 2016, with the provision that Dellamano could be reinstated immediately upon the making of certain disclosures regarding his business.

Also on December 21, the Court entered an Order [Docket No. 24], denying the Motion to Transfer.

Between December 21 and December 30, 2015, the Court's resources were committed to other matters, including to the preparation of orders in other

---

[17] As a practical matter, Dellamano did not need to receive mailed copies of Court documents. All attorneys (even those suspended from the use of CM-ECF) receive electronic copies of all documents in cases in which they appear.

[18] The Court issued the short, three-page Notice of Suspension on Friday, December 18, 2015, to make clear that Dellamano was suspended immediately. Debtors' attorneys often keep Saturday business hours for the convenience of their clients. The Court took then took the weekend to prepare a more thorough Final Order of Suspension, which was issued on Monday, December 21, 2015.

matters involving Dellamano.  In those nine days, the Court was required to issue a contempt of court order issued against Robinson, Meriwether and Dellamano in *In re Lawanda Watson*, a show cause order against Dellamano for the making of false statements in *In re Jessica White*, an order for disgorgement of fees against Meriwether and Dellamano in *In re Toni L. Davenport*, and an order denying Dellamano's motion to reconsider in *In re Lawanda Watson*.

The Court now returns to this Miscellaneous Proceeding and the Motion to Disqualify.  By issuing the Final Order for Suspension prior to formally ruling on the Motion to Disqualify, the Court determined, by implication, that disqualification was not proper. However, it appropriate to provide to Dellamano with a thorough disposition, so that a clear record is made on the denial.

## I. OVERVIEW OF THE LAW

A federal judge has an affirmative duty to preside unless he is disqualified. *See Davis v. C.I.R.*, 734 F.2d 1302, 1303 (8th Cir. 1984)(citing *National Auto Brokers Corp. v. General Motors Corp.*, 572 F.2d 953, 958 (2d Cir. 1978)); *S.E.C. v. Drexel Burnham Lambert Inc. (In re Drexel Burnham Lambert Inc.)*, 861 F.2d 1307, 1312 (2d Cir. 1988)("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."). A judge must not disqualify himself unnecessarily "because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping." *Matter of National Union Fire Ins. Co. of Pittsburgh*, 839 F.2d 1226, 1229 (7th Cir. 1988); *White v. National Football League*, 585 F.3d 1129, 1138 (8th Cir. 2009)(holding that § 455 "is not intended to give litigants veto power over sitting judges, or a vehicle for obtaining a judge of their choice." (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)); *M.K. Metals, Inc. v. National Steel Corp.*, 593 F.Supp. 991, 993-94 (N.D. Ill. 1984)(observing that if a judge were to recuse unnecessarily, "the price of maintaining the purity of appearance would be the power of the litigants or third parties to exercise a negative power over the assignment of judges").

Disqualification is not a matter of judicial discretion. As tempting as it may be, at times, for a judge to disqualify himself to avoid the difficult or the

controversial, that is not a luxury afforded under § 455. Section 455 does not permit a judge to disqualify himself to avoid the unpleasant or to placate the insistent. Disqualification also is not available to accommodate the paranoid. *See, e.g., In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1359 (8th Cir. 1996)(citing Sen. Rep. No. 93-419, 93d Cong., 1st Sess. 5 (1973))(holding that disqualification is not proper because a litigant has transformed fear of an adverse decision into fear of partiality). Section 455 "is not intended to give litigants veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *White v. National Football League*, 585 F.3d 1129, 1138 (8th Cir. 2009)(quoting *U.S. v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)). Disqualification without satisfaction of the § 455 elements undermines the statute and encourages judge-shopping by strategically timed § 455 motions.

By the plain language of § 455, the judge whose disqualification is sought presides over the court in determining whether disqualification is required. The determination of whether disqualification is required is entrusted to the Court's sound discretion. *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liability Litigation*, 601 F.Supp.2d 1120, 1124 (D. Minn. 2009)(citing *Moran v. Clarke*, 296 F.3d 638 648 (8th Cir. 2002)). Whether to hold a hearing of a § 455 motion is within the Court's discretion. *U.S. v. Heldt*, 668 F.2d 1238, 1271-72 (D.C. Cir. 1981). Whether it is appropriate and necessary to hold a hearing "may depend upon the nature of the allegations made." *Id.* at 1272. A judge is presumed to be impartial, and it is the "substantial" burden of the movant on a § 455 motion to prove otherwise. *United States v. Dehghani*, 550 F.3d 716, 721 (8th Cir. 2008); *Pope v. Federal Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992).

The Court is not required accept as true the allegations made in a § 455 motion. *U.S. v. Marin*, 662 F.Supp.2d 155, 158 (D.D.C. 2009)("[T]here is no support for the position that the facts alleged by a person relying on [§] 455 must in every case be accepted as true, whether the papers be a verified memorandum or are in some other form."); *U.S. v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986)("If a party could force [recusal] by factual allegations, the result would be a virtual 'open season' for recusal."); *U.S. v. Heldt*, 668 F.2d

11

1238, 1272 (D.C. Cir. 1981).  Moreover, a judge is free to make credibility determinations and may contradict the allegations made with facts drawn from his own personal knowledge. *U.S. v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985); *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994); *see also U.S. v. Sciarra*, 851 F.2d 621, 625 n.12 (3d Cir. 1988)(noting that "the factual accuracy of [§ 455] affidavits . . . may be scrutinized by the court deciding the motion for recusal."). Moreover, a judge may contradict the allegations made with facts drawn from his own personal knowledge. *U.S. v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985); *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994); *see also U.S. v. Sciarra*, 851 F.2d 621, 625 n.12 (3d Cir. 1988)(noting that "[t]here is considerable authority for the proposition that the factual accuracy of [§ 455]  affidavits may be scrutinized by the court deciding the motion for recusal.").

### III.  ANALYSIS

### A.  Section 455(b)(3)

Dellamano points to the Judge's previous governmental employment as the UST in support of his demand for disqualification under § 455(b)(1). However, § 455(b)(1) is not the subsection that statutorily establishes when a judge must disqualify himself due to previous governmental employment; that subsection is § 455(b)(3). The Court will treat Dellamano's disqualification demand as including a demand for disqualification under § 455(b)(3).

Section 455(b)(3) provides that a judge must disqualify himself "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." The circumstances here satisfy neither alternate condition for disqualification.

The "case in controversy" here is the Miscellaneous Proceeding.  While serving as the UST from 2003 to 2006, the Judge did not express an opinion about the Miscellaneous Proceeding, which was commenced in 2015.   He couldn't have—since he can't time-travel.

The Judge also did not "participate as counsel, adviser, or material witness concerning the proceeding"[19] while serving as the UST.   Again—being limited by his inability to teleport through time—the Judge could not have "participated in" this Miscellaneous Proceeding between 2003 and 2006.  And the fact that he participated as the name-plaintiff in *unrelated* proceedings while UST—two of which involved Critique Services L.L.C. and neither of which involved Dellamano—does not make mandate disqualification under § 455(b)(3) from this entirely separate proceeding.

## B. Section 455(b)(1)

Dellamano cites § 455(b)(1) as a basis for his disqualification demand. The first clause of § 455(b)(1) provides that a judge shall disqualify himself where he has "personal knowledge of disputed evidentiary facts concerning the proceeding."  The "disputed evidentiary facts" here relate to whether Dellamano should be sanctioned for having made false statements to the Court in a series of notices of appearance that he filed on December 16, 2015. Dellamano points to no disputed evidentiary fact in this Case about which the judge has personal knowledge.   He seems to argue that because certain chapter 7 trustees expressed to the Judge their concerns that regarding his participation in § 341

---

[19] This requirement is known as the "personal participation rule." *Baker & Hostetler LLP v. U.S. Dept. of Commerce*, 471 F.3d 1355, 1357 (D.C. Cir. 2006). The personal participation rule stands in contrast to the "associational standard." The associational standard is applicable pursuant to § 455(b)(2), which sets forth when a judge must disqualify himself related to his previous service in private practice.  If the associational standard applied to § 455(b)(3), a judge would be prohibited from presiding on the bare fact of his previous governmental employment. By contrast, § 455(b)(3) makes it clear that a judge is not automatically proscribed from presiding over a case due solely to his previous governmental employment. *See Rahman v. Johanns*, 501 F.Supp.2d 8, 14 (D.D.C. 2007)("Indeed, it is commonplace for judges to serve in the government prior to appointment to the federal bench, and [§] 455(b)(3) reflects Congress's studied response to this circumstance.")(internal citation omitted); *Mangum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995)("§ 455(b)(3) does not mandate recusal unless the former government attorney has actually participated in some fashion in the proceedings.").

meetings, the Judge is required to disqualify under § 455(b)(1).[20]   However, Dellamano's participation in § 341 meetings on behalf of Meriwether's clients is not a disputed evidentiary fact in this proceeding.  In this proceeding, Dellamano is not being subject to sanctions for any conduct at a § 341 meeting—even if his conduct might be sanctionable.

The second clause of § 455(b)(1) provides that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party . . ." Such bias or prejudice must be actual, and not merely in appearance, and it "must be evaluated in light of the full record, not simply in light of an isolated incident." *In re Federal Skywalk Cases*, 680 F.2d 1175, 1184 (8th Cir. 1982). A judge may not disqualify himself simply because a litigant has transformed his fear of an adverse decision into a fear that the judge will not be impartial. *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1359 (8th Cir. 1996)(citing Sen. Rep. No. 93-419, 93d Cong., 1st Sess. 5 (1973)).  Remarks by a court, even if critical of a party, generally are not evidence of bias. *Liteky v. United States,* 510 U.S. 540, 555 (1994). Likewise, prior rulings of the Court against a litigant are almost never evidence of bias. *Liteky v. United States,* 510 U.S. 540, 555 (1994).

Dellamano points to no fact establishing personal bias or prejudice. He merely points to the Judge's governmental employment and fact that the Judge is aware of Dellamano's conduct at § 341 meetings. These do not establish bias or prejudice. Dellamano is not entitled to a judge who has never crossed paths with Critique Services L.L.C. in his prior governmental employment; he is entitled only to a judge who is not required to disqualify himself under § 455(b)(3) due to his prior governmental employment. Dellamano also is not entitled to a judge who is clueless about the public conduct of attorneys at § 341 meetings.  Moreover, even if the Judge were not to think particularly highly of Dellamano because of

---

[20] Dellamano does not suggest that he did not commit these acts. He does not challenge the accuracy of the trustee's representations about the fact that Dellamano participated in § 341 meetings, as described.  He merely complains about the fact that the Judge was informed about his acts.

14

his conduct at § 341 meetings, such an opinion would not constitute bias or prejudice.  A judge is allowed to hold an opinion when such an opinion is warranted.  If Dellamano is concerned that the Judge might not have a great deal of respect for him because of his conduct at § 341 meetings, his remedy is not judicial disqualification; his remedy is to redeem himself by practicing properly and lawfully, and earning a better opinion of his conduct.

### C.  Section 455(a)

**1.    Demand for disqualification under § 455(a) is waived or abandoned.**

Dellamano baldly cites to § 455(a) in support of his disqualification demands.  However, that is the extent of his § 455(a) argument.  He does not even cite to the standard for § 455(a) (whether the judge's impartiality might be reasonably questioned).  He cites only to the standards for § 455(b)(1) (personal knowledge of disputed facts or bias or prejudice).  Merely citing to § 455(a) is not effective to make a demand for disqualification under § 455(a).  As such, the Court holds that Dellamano failed to demand disqualification under § 455(a) and waived the issue under § 455(a), or alternatively, Dellamano demanded disqualification under § 455(a) but abandoned his position by failing to make any allegations or argument in support.

**2.    Alternatively, demand for disqualification under § 455(a) is meritless.**

Even if it were proper to construe Dellamano's passing citation to § 455(a) as effective to make a demand for disqualification under § 455(a), disqualification under § 455(a) still would be not proper.

Section 455(a) provides that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned."  The standard application to § 455(a) is an objective one (what a reasonable person might believe), not subjective. Therefore, the proper test under § 455(a) is whether "a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *U.S. v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996)(quoting *Gray v. University of Ark.*, 883 F.2d 1394, 1398 (8th Cir. 1995)).  As one court explained, "[t]he reasonable outside observer is not . . . 'a person unduly

suspicious or concerned about a trivial risk that a judge may be biased,' since a presiding judge is not required to recuse himself solely because of 'unsupported, irrational or highly tenuous speculation.'" *In re 1103 Norwalk Street, L.L.C.,* 2003 WL 23211563, at *2 (Bankr. M.D.N.C. Dec. 11, 2003)(quoting *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1988)).

Section 455(a) is not determined by the subjective standard of whether a party feels that the judge is not impartial.

Despite the sweeping language of § 455(a), the statute does not extend literally to any kind of doubtful behavior. *United States v. Sypolt,* 346 F.3d 838, 839 (8th Cir. 2003). Section 455(a) "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merely unsubstantiated suggestion of personal bias or prejudice." *U.S. v. Cooley*, 1 F.3d at 993 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1234 (10th Cir. 1986)). Section 455 is not "intended to bestow veto power over judges or to be used as a judge shopping device." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)(internal citations omitted).

***Disqualification under § 455(a) Based on the Judge's Governmental Employment as the UST.*** As noted earlier, in support of his disqualification demand, Dellamano points to the fact that the Judge, in his official capacity as the UST almost a decade ago, received complaints about Critique Services L.L.C. and filed two adversary proceedings naming Critique Services L.L.C. as a defendant (all of which are unrelated to this Miscellaneous Proceeding). To the degree that Dellamano makes these allegations in support of a § 455(a) demand, the Court concludes that § 455(a) does not require disqualification based on these allegations. Dellamano cannot obtain through § 455(a) that which he could not obtain through § 455(b)(3). Such a result would be inconsistent with the language and purpose of § 455, undermining how the subsections of § 455 are intended to operate in complement, as case law shows.

In *Liteky v. U.S.*, 510 U.S. 540, 548 (1994)("*Liteky*"), the U.S. Supreme Court addressed the subsections of § 455 intersect. In turn, *U.S. v. Champlin*, 388 F. Supp.2d 1177 (D. Haw. 2005)("*Champlin*") applied *Liteky* in addressing a

16

§ 455(a) disqualification request based on a judge's previous service in government employment, when it had already been determined that § 455(b)(3) did not require disqualification for that service. *Champlin*'s reasoning makes it clear that § 455(a) does not operate as an alternative avenue for obtaining disqualification based on the judge's service in governmental employment, when that service does not require disqualification under § 455(b)(3).

In *Champlin*, the defendants in a criminal case moved that the judge disqualify himself. The *Champlin* court first rejected the defendants' argument that disqualification was required under § 455(b)(3) based on the judge's previous service in governmental employment as a supervising attorney the U.S. Attorney's Office for the District of Hawaii (the same Office that was prosecuting the defendants in that proceeding). The court noted that a judge who served in governmental employment is not subject to the broader disqualification provisions under § 455(b)(2), which apply to a judge who served in private practice. In doing so, that court noted that "the distinction between a private law firm and government service was recognized by the Supreme Court in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), in oft-cited language . . . '[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartiality is as compelling as its obligation to govern at all . . .' *Id.* at 1180." (Likewise, for purposes of the disqualification analysis in these Cases, the UST is not the representative of an ordinary party to a controversy, but of a sovereignty.)

The *Champlin* court then rejected the argument that disqualification was required under § 455(a) for the same service that did not require disqualification under § 455(b)(3). The *Champlin* court, relying on *Liteky*, reasoned:

As the Supreme Court observed in *Liteky*, §§ 455(a) and 455(b) cannot be viewed in isolation. Instead, § 455(a) both expands *and duplicates* the protection of § 455(b). *Liteky*, 510 U.S. at 552-53, 114 S.Ct. 1147. While § 455(a) is a general provision that requires recusal whenever a judge's impartiality may reasonably be questioned, § 455(b) enumerates specific scenarios requiring recusal because a judge's impartiality might be questioned. In the areas of overlap between § 455(b) and § 455(a), the Supreme Court observed that "it is unreasonable to interpret § 455(a) (unless

the language *requires* it) as implicitly eliminating a limitation explicitly set forth in § 455(b)."

As an example of this principle, Justice Scalia's opinion discussed § 455(b)(5), which requires recusal when someone within three degrees of family relationship to the judge has an interest in the case. Section 455(a) would not require recusal if a party had a fourth degree relationship to the judge because § 455(b)(5) has already addressed the issue of family relationship and placed an end to the disability at the third degree of relationship. *Id.* The Court likewise concluded that § 455(b)(1), "which addresses the matter of personal bias and prejudice specifically, contains the 'extrajudicial source' limitation—and *that* limitation (since nothing in the text contradicts it) should govern for purposes of § 455(a) as well."

Likewise, prior government employment, addressed in § 455(b)(3), provides a specific limitation for judges previously serving as government attorneys, and "*that* limitation (since nothing in the text contradicts it) should govern for purposes of § 455(a) as well." Section 455(b)(3), therefore, fixes the standard for § 455(a) recusal with respect to prior government employment. To hold otherwise would result in inconsistent applications of the two sections, a result specifically rejected by the Supreme Court.

*Id.* at 1182-83 (emphasis in original).

The *Champlin* court concluded that the defendants' argument "is the very limitation addressed specifically in § 455(b)(3) and cases interpreting that section" that would, in effect:

broaden the scope of §§ 455(a) and (b) to provide for imputed disqualification of judges based on prior government service, a rule applied to judges previously in private practice. Such imputed disqualification does not apply in the context of government employment. Further, to expand the reach of § 455(a), in these circumstances, beyond the limitations of § 455(b)(3) would render meaningless the specific limits of § 455(b)(3) and create an inconsistency between the two provisions. With respect to claims based on prior government service, the § 455(b)(3) standard applies with equal force to § 455(a).

*Id.* Dellamano's argument similarly fails to reconcile § 455(a) with § 455(b)(3). He knows that he cannot obtain disqualification under § 455(b)(3) (he did not even make a § 455(b)(3) argument), so he instead tries to obtain disqualification based on the Judge's governmental employment under § 455(a).   Like the

*Champlin* defendants, Dellamano seeks to "broaden the scope of §§ 455(a) and (b) to provide for imputed disqualification of judges based on prior government service." He seeks to "expand the reach of § 455(a), in these circumstances, beyond the limitations of § 455(b)(3)"—a result that "would render meaningless the specific limits of § 455(b)(3) and create an inconsistency between the two provisions." Like the *Champlin* defendants, Dellamano seeks to undermine § 455(b)(3) while over-empowering § 455(a). Under his theory of the intersection of the subsections of § 455, subsection (b)(3) would no longer be the fixed standard for determining whether prior governmental employment requires disqualification. As such, the Court rejects this application of § 455(a), for the same reason articulated in *Champlin*: it "would result in inconsistent applications of the two sections, a result specifically rejected by the Supreme Court."

The crux of Dellamano's demand for disqualification is the fact that, as the UST, the Judge had contact with Critique Services L.LC. That is, he complains that the Judge was the name-plaintiff in any matter not against him, but against a company with which Dellamano *has voluntarily chosen to association himself*. This association is not a basis for disqualification. Dellamano cannot, essentially, "buy himself" disqualification of the Judge by choosing to associate himself with Critique Services L.L.C. Even if the Judge were required to disqualify himself from a matter where Critique Services L.L.C. is a party (which he is __*not*__, unless the elements of § 455(b)(3) are met), that *still* would not require that the Judge disqualify himself from a matter where Dellamano is a party. If Dellamano is uncomfortable with the fact that the Judge was a name-plaintiff a decade ago on two complaints filed against Critique Services L.L.C., he should have considered that before he chose to associate himself with Critique Services L.L.C. But Dellamano has no remedy for his discomfort by means of judicial disqualification.

***Disqualification under § 455(a) Based on the Communications from Certain Chapter 7 Trustees.*** As previously noted, in support of his disqualification demand, Dellamano points to the fact that the certain chapter 7 trustees expressed to the Judge their concerns about his activities at § 341

19

meetings. To the degree that Dellamano argues that these communications require disqualification under § 455(a), the Court rejects such argument.

Dellamano accuses the Judge of having impermissible ex parte communications by way of communications with the trustees. This is false. Impermissible ex parte communication occurs when an adjudicator and a party to the matter to be adjudicated have communications that (i) are relevant to the merits of a pending or impending matter, and (ii) are not on the record or on reasonable prior notice to all parties. Here, the communications did not involve any matter to be adjudicated, in either a bankruptcy case or in this Miscellaneous Proceeding (in fact, the communications occurred long before the Miscellaneous Proceeding was opened, and the Miscellaneous Proceeding does not involve the concerns raised by the trustees). Further, Dellamano was not entitled to be present for such communications with the trustees or to have notice of such communications. The communications did not involve any matter to be adjudicated in a case where Dellamano purported to represent a client. And Dellamano himself was not a "party" (there were no "parties," since there was no matter to be adjudicated). The fact that Dellamano was the subject of the communications did not make the communications improper ex parte.

Further, not only were the communications not impermissible, but they were entirely permissible and proper. A trustee, like any other attorney, is obligated to report to the proper authorities serious professional conduct violations of another attorney. *See, e.g.,* Mo. Supr. Ct. R. Prof. Conduct 4-8.3(a) ("A lawyer who knows that another lawyer has committed a violation of the Rule of Professional Conduct that raises a substantial question as to that lawyer's honest, trustworthiness or fitness as a lawyer in other respects *shall* inform the appropriate professional authority" (emphasis added).). Reporting serious professional misconduct of another attorney is essential to the effectiveness of the self-regulating profession of the law. *See* Mo. Supr. Ct. R. Prof. Conduct 4-8.3 Cmt. [3] (attorneys have a "reporting obligation to those offenses that a self-regulating professional must vigorously endeavor to prevent.").

Yet Dellamano expected the trustees to be de facto collaborators in his misconduct.  He used their § 341 meetings as a forum for apparent misconduct, on the assumption that the trustees would turn a blind eye. There is little explanation—other than possibly ignorance or arrogance—for what gave Dellamano the idea that his behavior would go unreported. The trustees do not play games of wink-and-nod. The trustees are well-respected members of the legal community and are in good standing with the Court—and likely want to keep it that way.  If they had done nothing in the face of Dellamano's conduct, they risked being held accountable themselves. They advised the Court of what was going on because it was their professional obligation to do so, and to ensure that they would not later wind up having to explain to the Court why they did nothing to bring Dellamano's conduct to the attention of the proper authorities.

Although professional misconduct generally is reported to a bar disciplinary agency, an attorney may report it to some other agency, if doing so is more appropriate under the circumstances. *See, e.g.,* Mo. Supr. Ct. R. Prof. Conduct 4-8.3 Cmt. [3].   Here, reporting to the Judge about the suspected professional misconduct of an attorney in a bankruptcy case before the Court was clearly appropriate.  The Judge is responsible for ensuring that his docket and courtroom are not venues for misconduct and abuse.  Frankly, Dellamano was just lucky that the trustees did not also report his conduct to the bar disciplinary agency for the state of Illinois.

Dellamano also accuses the Judge of judicial misconduct under Rule 3(h)(1)(c) of the Judicial-Conduct and Judicial-Disability Proceedings of the Judicial Conference of the United States.  This accusation is baseless.  Rule 3(h)(1)(c) provides that "Cognizable misconduct: (1) is conduct prejudicial to the effect and expeditious administration of the business of the courts. Misconduct includes, but is not limited to: . . . having improper discussions with parties or counsel for one side in a case."   However—as previously explained—the communications were not an "improper discussion" and did not occur with "parties or counsel for one side in a case."   There were no "sides."  There was

21

no "case." And none of it had anything to do with the issues to be determined in this Miscellaneous Proceeding.

Last, Dellamano accuses the Judge violating Federal Rule of Civil Procedure 9003.  This, too, is baseless. Rule 9003 provides that "any examiner, any party in interest, and any attorney, accountant, or employee of a party in interest" shall refrain from ex parte contact. Setting aside the fact that there was no improper ex part contact, this rule does not prohibit *the Court or a judge* from doing anything.  Rule 9003 does not apply to judges.

Nothing Dellamano alleged or argued supports a determination that disqualification is required under § 455(a).

### IV. CONCLUSION

For the reasons set forth herein, the Court **ORDERS** that the Motion to Disqualify be **DENIED**.


DATED: January 4, 2016
St. Louis, Missouri 63102
mtc

CHARLES E. RENDLEN, III
U.S. Bankruptcy Judge


**COPIES TO:**

Robert J. Dellamano
Critique Services
3919 Washington Blvd.
St. Louis, MO   63108

Robert J. Dellamano
Attorney at Law
100 S. 4th St., Ste. 550
St. Louis, MO 63102