IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | § | Case No. 15-MISC-0402 |
| | § | |
| Robert J. Dellamano, | § | Matter of Court Business |
| | § | |
| Debtor. | § | |

## ORDER PROVIDING ADDITIONAL TERMS FOR REINSTATEMENT FROM SUSPENSION

On December 18, 2015, attorney Robert J. Dellamano, of the "bankruptcy services" business known as "Critique Services" (the "Critique Services Business"), was suspended from the privilege of practicing before this Court until March 7, 2016, for the making of false statements in documents filed with the Court on December 16, 2015. The terms of his suspension are set forth in the Notice of Suspension and the Final Order of Suspension entered in this Miscellaneous Proceeding [Docket Nos. 17 & 23]. Now, based on Dellamano's making of other, additional false statements in connection with *In re Jessica White* (15-48556), the Court orders that Dellamano's reinstatement from his suspension be made contingent on certain additional terms, set forth herein.

## I. BACKGROUND

On November 12, 2015, attorney Dean D. Meriwether of the Critique Services Business filed a petition for bankruptcy relief for Jessica White ("Debtor White"), thereby commencing *In re Jessica White* (Case No. 15-48556 Docket No. 1]. Also on that date, the Court entered an Order [Docket No. 4], setting the statutorily required § 341 meeting of creditors for December 18, 2015. However, on December 7, 2015, in *In re Leander Young* (Case No. 15-44343), Meriwether was suspended from the privilege of practicing before this Court until March 7, 2016, for client abandonment, the unauthorized practice of law, and making false and misleading statements. Meriwether did not file a notice of appeal from his suspension order.

On December 18, 2015, sometime after 10:00 A.M. but before 4:33 P.M., Debtor White's § 341 meeting was held. Dellamano—who had been practicing

1

law and participating in a law business with Meriwether at the Critique Services Business since July 2015, despite not being licensed to practice law in the state of Missouri—appeared as Debtor White's counsel at the § 341 meeting.

As noted previously, on December 18, 2015, at 4:33 P.M. (after the § 341 meeting), Dellamano was suspended from the privilege of practicing before this Court until March 7, 2016.

On December 22, 2015, the chapter 7 trustee (the "Trustee") in *In re Jessica White* filed a "Notice of False and/or Misleading Statements in Docket Entries Nos. 9 and 10" (the "Notice") [Case No. 15-48556 Docket No. 12], reporting that representations made at the § 341 meeting appeared to show that Dellamano had made false and misleading statements in his Notice of Appearance [Case No. 15-48556 Docket No. 9] and Disclosure of Compensation of Attorney for Debtor [Case No. 15-48556 Docket No. 10] (his "Rule 2016 Statement."[1]).

On December 23, 2015, the Court entered a Show Cause Order in *In re Jessica White* [Case No. 15-48556 Docket No. 13], directing that: (i) the Trustee file a copy of the certified transcript of the § 341 meeting by January 4, 2015; and (ii) Dellamano show cause why sanctions should not be imposed upon him. The Court provided that any written response must be filed by January 7, 2016.[2]

The Trustee timely filed the transcript of the § 341 meeting (the "Transcript") [Case No. 15-48556 Docket No. 19]. Dellamano, however, did not file a response to the Show Cause Order or otherwise attempt to show cause why he should not be sanctioned. He did not seek an extension of time to respond. He did not ask to be heard orally. He did nothing.

## II. NOTICE

The Show Cause Order was electronically mailed to Dellamano at his email address on record with the Court (robert.dellamano@yahoo.com). It also

---

[1] The reference is to Federal Rule of Bankruptcy Procedure 2016.

[2] Dellamano's suspension did not prohibit him from responding to the Show Cause Order.

was mailed to Dellamano at the Critique Services Business Office (3919 Washington Blvd., St. Louis, Missouri 63108) and at his mailbox address on record with the Court as of December 18, 2015 (100 S. 4th St., Ste. 550, St. Louis, Missouri 63102).

### III. ACCEPTANCE OF FACTUAL ASSERTIONS AND THE TRANSCRIPT

Dellamano did not contest any representation in the Notice or any portion of the Transcript. Accordingly, the Court finds credible and accepts as true the Trustee's factual assertions in the Notice. In addition, the Court accepts the Transcript as an accurate and complete transcript of the § 341 meeting.

### IV. FACTS

On December 17, 2015, the Debtor White contacted the Trustee. She stated that she has been contacted by the Critique Services Business and had been advised that the § 341 meeting of creditors in her case, scheduled for December 18, 2015, had been canceled. However, the § 341 meeting had not been canceled, and the Trustee advised Debtor White of this fact.

On December 18, 2015, shortly before the § 341 meeting of creditors was scheduled to commence, Dellamano appeared in the meeting room and "reported" that none of Meriwether's clients whose meetings were scheduled for that day would appear, and requested that their meetings be continued.

At the time that Dellamano made this "report," he was not Debtor White's attorney of record. He had not yet filed his Notice of Appearance or his Rule 2016 Statement in *In re Jessica White*. Moreover, it appeared that Dellamano had not even bothered to determine whether Debtor White was present or whether she wanted the continuance he requested on her behalf.

Debtor White was present and she responded to Dellamano's request for a continuance by refusing to consent to a continuance. The Trustee requested that Dellamano and Debtor White determine how they wanted to proceed, and the two excused themselves. When they returned, they advised the Trustee that they would go forward with the meeting. Dellamano advised that he would return after "filing some documents."

3

Dellamano then went to the Office of the Clerk of Court to file his Notice of Appearance and his Rule 2016 Statement. Dellamano attached to his Notice of Appearance a copy of his Retainer Agreement with Debtor White. The Retainer Agreement provided that, "Attorney Meriwether has issued to me a partial refund and I have retained the services of Attorney Dellamano." In addition, in his 2016 Statement, Dellamano stated that he had been paid $100 in compensation, and that the source of that compensation had been the Debtor.

Sometime after 10:00 A.M., Dellamano returned to the § 341 meeting room. The § 341 meeting was held, with Dellamano representing Debtor White. During the meeting, Dellamano provided to the Trustee a copy of his Notice of Appearance and his Rule 2016 Statement.

During the § 341 meeting, the Trustee advised Debtor White that the Retainer Agreement attached to Dellamano's Notice of Appearance provided that Meriwether had issued to her a partial refund of her fees. The Debtor White disputed that assertion: "I didn't get any refund. I requested for a refund back."

Incredibly, in response to this statement by his client, Dellamano then proceeded to ***throw his own client under the bus.*** The portion of the transcript involving Dellamano's response to his client's claim that she did not receive a refund was an exercise in client abuse and abandonment, conducted by Dellamano for the sole purpose of trying to save his own rear end.

Instead of making any effort to protect or counsel his client, Dellamano attacked her—on the record, in front of the Trustee. He accused Debtor White: "You signed that piece of paper." When Debtor White—flustered by the situation, but clear in her contention—reiterated that she did not receive a refund, Dellamano (without any concern that further discussion on the record might not be in his client's best interests) persisted: "Did you read that document?" When Debtor White then—once again—stood her ground and insisted, "No one gave me no refund," Dellamano demanded (in what appears to have been a sneering response): "Did you read that document before you signed it? No?"

As the § 341 meeting wore on, Debtor White's testimony revealed that Dellamano had failed to provide to his client any counsel regarding the Retainer

4

Agreement and failed to review her documents with her. Debtor White explained that Dellamano was not event present when she was given the Retainer Agreement to sign. She stated that "the lady in the front receptionist's office" "explained" it to her. Debtor White stated that, when she signed the Retainer Agreement, she "thought [she] was just signing that he [Dellamano] was going to be my new attorney . . ." Dellamano then *blamed his client for signing the document that he had prepared for her and had office staff instruct her to sign,* proclaiming: "Her signature would indicate that she read and understood the document." That is, in an attempt to make himself look less culpable, Dellamano *insisted that his client knowingly signed a false document that he later filed with the Court in support of his appearance*.

Moreover, the disrespectful demeanor with which Dellamano had been conducting himself toward his client is revealed in the transcript. The situation became so bad that the Trustee—an attorney well-known for her professional decorum and restraint, but who would not have allowed her § 341 meeting to become a forum for abuse of a debtor—felt compelled to step in, admonishing Dellamano: "Mr. Dellamano, let's not attack our client."

## V. ANALYSIS OF FALSE STATEMENT IN THE RETAINER AGREEMENT

The making of the false representation in Dellamano's Notice of Appearance by way of the Retainer Agreement is *entirely the fault of Dellamano*. Dellamano had the agreement prepared. Dellamano had the agreement provided to the Debtor for her signature. Dellamano failed to counsel Debtor White before she executed the agreement. Dellamano failed to do any due diligence whatsoever regarding the facts asserted in the agreement. And, Dellamano blamed his own client for the results of his inexcusable lawyering. At every step, without exception, Dellamano did everything wrong—professionally and ethically—related to the Retainer Agreement, and even now, he accepts no responsibility for his actions. His complete disregard of his client's interests is professionally reprehensible and boundlessly narcissistic.

5

## VI. ANALYSIS OF FALSE STATEMENT IN THE RULE 2016 STATEMENT

The Transcript also shows that Dellamano lied about whether and how he was paid—and he certainly can't blame his client for that false statement. In his Rule 2016 Statement that he prepared and signed, Dellamano stated that he received $100 in compensation from Debtor White. However, when the Trustee sought to confirm the source of the $100, Dellamano stated that the $100 "would have been" taken out of Debtor White's refund. However, Debtor White was not issued a refund—so, that statement couldn't have been true. Then, once he got inextricably ensnared in his own web of infidelity to the facts, Dellamano eventually admitted that, in fact, he had never received the $100 from Debtor White, or from anyone else. Dellamano's false statement on this point shows that, once again, Dellamano made no effort to ascertain the truthfulness of his assertions about something as important as his client fees.

Moreover, Dellamano's testimony indicates that, since Meriwether's suspension, the persons at the Critique Services Business have simply been moving money amongst themselves. Meriwether is not returning unearned fees to his clients (despite the entry of numerous orders for disgorgement of unearned fees that have been entered in cases filed by Meriwether). Meanwhile, the Critique Services Business has its clients sign falsified Retainer Agreements stating that a partial refund had been made—then treats a portion of the fees collected by Meriwether as a fee paid to Dellamano. Who knows where all that cash is or who is holding it. It is clear, however, that the fees aren't being refunded to clients.

## VII. DIRECTIVE

Dellamano, either personally or through an agent at the Critique Services Business, lied to Debtor White, by falsely advising that the § 341 meeting of creditors was canceled. Dellamano lied to the Trustee about Debtor White just prior to the commencement of the § 341 meeting, by falsely advising that Debtor White would not be appearing and that she wanted a continuance of the meeting. Dellamano lied to the Court in his Notice of Appearance, by falsely representing that Debtor White received a refund from Meriwether. Dellamano lied again to

6

the Court in his Rule 2016 Statement, by falsely stating that he received $100 in compensation from Debtor White. And Dellamano lied at the § 341 meeting, by falsely insisting that he had been paid $100 in compensation from Debtor White, and by falsely stating that he had obtained $100 in compensation from the fees paid to Meriwether. In addition, at the § 341 meeting, Dellamano shamefully attempted to pin the fault for his unprofessional behavior on his own client, repeatedly trying to solicit from her an "admission" that she had read the Retainer Agreement, and by implying that she was responsible for the false document that he had prepared for her signature.

At noted previously, Dellamano currently is suspended (not ironically, for making false statements to the Court). The Court has little confidence that Dellamano will emerge from his current suspension a new, honest attorney. He certainly has made no effort to do so, thus far. He holds the keys to the prison of his suspension in his pocket: under the terms of his suspension, the suspension will be lifted if Dellamano provides certain disclosures about his business. Dellamano has not provided these disclosures and has made no suggestion that he ever intends to provide these disclosures. He has made no effort to be honest with the Court about how he does business. The circumstances of *In re Jessica White* only further confirm that Dellamano cannot be trusted to be an honest practitioner in his dealings with his clients, other attorneys, or this Court.

For these reasons, the Court **ORDERS** that the reinstatement of Dellamano's current suspension be made contingent—in addition to all the terms set forth in the Final Order of Suspension entered on December 21, 2015—upon Dellamano establishing to the Court's satisfaction that he can be trusted not to make false statements. To do this, Dellamano must:

(i) attend fifteen hours of in-person coursework (not through the internet or some other remote course) in continuing legal education, specifically in ***LEGAL ETHICS***, and provide evidence of the completion of this coursework to the Court;

(ii) provide to the Court a detailed plan setting forth how he will operate his business in the future, such that the making of false statements by himself, or any agent of his, may be avoided; and

(iii) agree that, if in the future, he is found to have knowingly made, or to have knowingly allowed to be made on his behalf, a materially false or misleading statement to his client, a case trustee, the Court, or any person within an office at the Department of Justice, concerning any case before this Court, he will agree to an ***immediate six month suspension*** from the privilege of practicing before this Court.

A copy of this Order will be provided to the Missouri Supreme Court's Office of Chief Disciplinary Counsel, the Attorney Registration & Disciplinary Commission of the Illinois Supreme Court, and the U.S. District Court for the Eastern District of Missouri, in support of the referrals already being made to those authorities, as set forth in the Referral entered in this Miscellaneous Proceeding on January 6, 2016.

DATED: January 8, 2016  
St. Louis, Missouri 63102  
mtc

CHARLES E. RENDLEN, III  
U.S. Bankruptcy Judge

**COPIES TO:**

Robert J. Dellamano  
Critique Services  
3919 Washington Blvd.  
St. Louis, MO 63108

Robert J. Dellamano  
Attorney at Law  
100 S. 4th St., Ste. 550  
St. Louis, MO 63102